*The PRESIDENT
delivered the opinion of the court.
However it might appear to the Chancellor, this court have no doubt, but that the answer is fully disproved by more than two witnesses, who make it evident, that by the original agreement, before the work was begun, Mr. Dandridge was to have the alternative, and that at the time of signing the agreement, he refused his signature until Harris promised to make the endorsement allowing him that privilege. The alternative is an important part of the contract, since it might make a considerable difference to the appellant, whether he should give up his property at a fair valuation, or be obliged to part from it under an execution at three fourths of its value, or, if he replevied, to have it finally sold, perhaps at a much greater loss.
It appears, that in the action at common law, brought by Harris upon the agreement, the jury found a special verdict, stating the above facts, as set forth in the bill. The appellant excepted to the opinion of the court, permitting the appellee to give parol evidence of those facts, and the judgment which was in favor of the appellee was reversed in the district court on account of the parol evidence having been admitted. Whatever might be the decision of a court of law upon the propriety of admitting such proof-to contradict a written agreement, there can be no doubt in equity, but that the appellee refusing to make that endorsement, upon his promise to do which the agreement was signed, and availing himself of that agreement as an absolute one, which in fact was only conditionally executed, he was guilty of a fraud, against which the court will relieve, by considering the endorsement as made, and incorporated into the agreement. The case of Walker v. Walker in 2d Atk. 98, which was read at the bar, does not apply; there was no written agreement in that case, and the question was, whether the parol evidence of it could be admitted, under he statute of frauds and perjuries. But there is a case there put by the Chancellor, which does apply. He supposes a person, advancing money, and taking an absolute conveyance, to which, by agreement, there was to be a defeasance, should refuse to execute the defeasance. He puts the question; will not this court relieve against such a fraud? A-strong manner of declaring his opinion that it would, and it is very much like the case before the court. Considering the endorsements then as made, the court proceed to consider what would have been the effect of it, at law. The defendant at law might have pleaded the special matter, that he was always ready to deliver property ; *that the plaintiff had neglected to name a person to value it, tho’ he had promised to do so, and had refused to receive the property; which plea would have been supported by the proofs in the cause. But for want of this endorsement, the defendant was probablj’ advised that he could not plead this matter, it being dehors the agreement, and therefore he pleaded conditions performed. It is true, the court permitted him at the trial, to give evidence of those facts; and if the jurjr had upon that evidence decided against him, it would be • reasonable that he should be bound thereby, since he would have had a fair trial upon the merits, as much so, as if the endorsement had been made. But that is not the case. The jury found matter suffi *561 cient to excuse him, and the County Court gave judgment in his favor, which the District Court reversed, the ground of which reversal appears in the exceptions to have been, the admission of the parol evidence; so that the appellee has committed a fraud in withholding the endorsement, and has then availed himself of it, by a legal objection, founded upon the want of that endorsement. If this be not a proper case for relief in equity, we are at a loss to know how one can exist.
Duval and Marshall for the plaintiff in error.
Campbell for the defendant.
N. B. The arguments at the bar are omitted being noticed much at large by the court.
It was then objected, that suppose the endorsement made, it was the duty of Mr. Dandridge to tender property immediately, or else he lost the benefit of the alternative. This case from its nature is very different from the common one of a debtor, owing money, who is obliged to seek his creditor in order to pay the debt. Here property was to be delivered, which could not so easily be conveyed from place to p'ace as money, and it would be natural to suppose, that it was to be valid and received at the defendant’s house; and the rather so, as being more convenient to him, in the selection of property which might have taken place. That an actual tender of property was made prior to that made at Johnson’s in November 1787, after the suit was brought, does not appear. And if it had stood upon that alone, the court would have considered Mr. Dandridge as having failed in performing his part of the agreement and consequently that he had forfeited the alternative. But the fact appears tobe, that on the 16th of December 1786 (the very day the work was finished,) the3’ settled their accounts, and fixed the balance at £48. Mr. Harris called upon Mr. Dandridge to sign the account, which be refused to do, unless Harris would state that property was to be paid; a circumstance which he constantly adhered to as a part of the original agreement. He then desired Harris to come to him with the writing, and to join in naming persons to value the ^property, and to receive it, which Harris promised to do the next day, or the day after, but did not. Mr. Dandridge then wrote a letter to the father and son, requesting them to come and have the property valued. They did not object, that the property should be carried to them, but declared they would not receive property, and in February 1787, only 41 days from the time the work was finished, and before Mr. Dandridge could probably have time to make a legal tender, Harris brought his suit.
Upon this view of the case, although Mr. Harris appears to have done his work honestly, and is entitled to his stipulated reward, yet since he has been delayed by what this court calls a fraud in him, and bv his endeavours to use that fraud to the disadvantage of the other party, he stands in a very different point of view in equity, from Mr. Dandridge, whose conduct through the whole transaction appears to have been fair and upright, at all times willing to perform his real agreement.
The court have to lament the expenses which have been incurred on the occasion, but are of opinion, that they ought to fall upon Mr. Harris, the party in fault, who is adjudged to pay the whole costs at law and in equity”.
It is objected that the court cannot decree a specific execution in this case, because the valuers were to be named by the parties, and as they' did not name them, it is contended that the court cannot do it for them. In the cases of Pleasants Shore & company, and Anderson v. Ross, (ante p. 156,) and Smallwood v. Hansborough, (ante p. 290,) the parties named the valuers in their agreement, and it was decided that others could not be substituted in their stead, upon their refusing in the one case to act, and in the other not having perfected what they were to do. In this case, no persons were named, so as to shew a personal confidence, but a description of their character only ; they were to be honest men; and it is supposed, that if the parties should refuse to name, the Chancellor might eásily find two men in the state to answer the description. The court are also of opinion, that the Chancellor might appoint a day, before which the parties should name the valuers, or in case either refused, might direct it to be done by two honest men appointed by himself, to value the property, (negroes excepted) and upon delivering, or tendering the property so valued, to the amount of ,£48, the injunction to be perpetual.
But as there is difficulty in such a decree, which may be delayed, if not defeated, by the valuers, whether chosen, or appointed, refusing to act; and since the appellant coming *into equity, must do equity, and it appearing, that he has parted with the property in the mare, which in his bill he suggests to have been accepted by Harris, at .£45, and to have been kept for him by the appellant; and the appellant having declared before bringing this suit, that he intended to pay the money, and only contended for the costs, the court is of opinion that the judgment at law ought to remain in force as to the ¿£48, and be injoined as to the costs.
We therefore reverse the Chancellor’s decree with costs. The injunction to be made perpetual as to all the costs at law: and to be dissolved as to the balance of the £48, if any shall remain after deducting therefrom the appellant’s costs at law and in equity, as well as in this court: and if upon the adjustment of the account of the said £48 against the said costs, any balance shall rem'ain due to the appellant, in that case the injunction to be perpetual as to the £48, and the appellee decreed to pay such balance.